IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NSPIRE SPORTS LEAGUE, LLC and TIMOTHY LEE THOMPSON, <br><br> Plaintiffs, <br><br> VS. <br><br> NATIONAL PHYSIQUE COMMITTEE OF THE USA, INC. and JAMES B. MANION, <br><br> Defendants. | CIVIL ACTION NO. _____ <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Nspire Sports League, LLC ("NSL") and Timothy Lee Thompson ("Mr. Thompson") (collectively referred to as the "Plaintiffs") file this Original Complaint against National Physique Committee of the USA, Inc. d/b/a NPC ("NPC") and James B. Manion ("Mr. Manion") (collectively referred to as the "Defendants"), and would show the Court as follows:

**NATURE OF ACTION**

1. This case arises from the Defendants' repeated breaches of a settlement agreement that they entered into with Plaintiffs just two months ago.

2. The purpose of the settlement agreement was to resolve litigation that was pending between the parties in this District and in District Court in the Northern District of Texas, and to clear the way for NSL and NPC to compete fairly in the field of competitive bodybuilding. But the ink on the agreement was hardly dry before Defendants began to engage in a pattern of unfair and anti-competitive activities that violated the terms of the agreement.

3. The purpose of this action is to hold Defendants accountable for these breaches and to clear the way for transparent and healthy competition in the bodybuilding community.

## THE PARTIES

4. Plaintiff NSL is a Texas limited liability company with its principal place of business at 2430 Victory Park Lane, Dallas, Texas 75219.

5. Plaintiff Lee Thompson is an adult individual with a mailing address of 2430 Victory Park Lane, Dallas, Texas 75219.

6. Defendant NPC is a non-for-profit Ohio corporation that has been headquartered in and transacting business out of Pittsburgh, Pennsylvania since approximately 1985. NPC's offices are located at 212 9th Street, Suite 500, Pittsburgh, Pennsylvania 15222.

7. Defendant James B. Manion is an adult individual with a mailing address of P.O. Box 442, Carnegie, Pennsylvania 15106 who, upon information and belief, is a resident domiciled in Pennsylvania. He is the president of NPC.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over NPC because NPC has its primary place of business in this District and conducts the majority of its business activities in this District. The Court has personal jurisdiction over Mr. Manion, who is domiciled in this district.

10. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(c) because both Defendants reside in this District and a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this District. In addition, this lawsuit arises from a written agreement in which Plaintiffs and Defendants specified that any disputes arising from the agreement should be decided solely and exclusively by this Court.

## FACTUAL BACKGROUND

11. The 1977 hit film "Pumping Iron" followed a young Arnold Schwarzenegger as he prepared to face Lou Ferrigno for the title of Mr. Olympia, and for many Americans it was their first glimpse into the world of competitive bodybuilding.

12. Since that time, competitive bodybuilding (sometimes referred to in the industry as "physique" and /or "fitness" competitions) has grown to be a popular sport that attracts tens of thousands of amateurs and professionals in the United States, and hundreds of thousands of athletes around the world.

### Oversight Bodies – and their Connection to James Manion

13. Globally, amateur bodybuilding is overseen by the International Federation of Bodybuilding and Fitness ("IFBB"). Based in Madrid, Spain, the IFBB is to the sport of bodybuilding what the Swiss organization FIFA is to the sport of soccer – a lightly regulated entity that wields immense power over how and when official competitions are held, and how sponsorship money flows around the world.

14. Defendant James B. Manion is the Vice President for North America of IFBB.

15. Until 2006, the IFBB oversaw both professional and amateur bodybuilding competitions in the United States. In that year, the IFBB spun off its professional arm as "IFBB Professional." IFBB Professional now governs professional bodybuilders in America. In the United States, to "go pro" as a bodybuilder means to become an "IFBB Pro."

16. Defendant James B. Manion is also President of IFBB Professional.

17. While IFBB Professional enjoys a virtual monopoly over the administration of *professional* bodybuilding in the United States, Defendant NPC dominates the field of *amateur* bodybuilding. It is the only domestic amateur bodybuilding organization that is recognized by the IFBB. It claims membership of more than 30,000 individuals across the United States. On a

yearly basis, NPC regulates, organizes, promotes, and sanctions more than 300 bodybuilding, fitness, and/or physique competitions throughout the country.

18. Defendant James B. Manion is also President of NPC.

19. Both the IFBB and the NPC exert significant control over their member athletes and judges.  The IFBB's written constitution provides that "any athlete or official who participates in a competition or event not approved or sanctioned by the IFBB, may be fined, suspended or expelled" from the organization.  (Art. 19.4.7).  The constitution further states that no IFBB "athlete, judge, official, administrator or other Member shall hold membership in any other bodybuilding and/or fitness organization; nor shall that Member *participate in or promote, in any way, shape or form*, their activities, failing which the Member may be fined, suspended or expelled."  (Art. 19.4.8) (emphasis added).

20. Due to his unique position of authority in the three primary governing bodies of professional and amateur bodybuilding, Mr. Manion wields significant, unequaled influence over the sport in the United States.

**Mr. Thompson's Departure from NPC and IFBB**

21. Plaintiff Lee Thompson was an officer of Defendant NPC for 12 years, serving most recently as the organization's chairman in Texas.  In that role, Mr. Thompson was primarily responsible for the promotion of all NPC and IFBB sanctioned events in Texas.

22. Mr. Thompson also served as a certified judge for the IFBB for 10 years.  During that period he judged IFBB and NPC sanctioned competitions all around the world.

23. In these capacities, Mr. Thompson worked closely with Mr. Manion and became familiar with his leadership style, and with the inner workings of the IFBB, IFBB Professional, and NPC.

24. Over time Mr. Thompson grew concerned with the way the three organizations – all under the direction of Mr. Manion – were administering the sport of bodybuilding in the United States.  Mr. Thompson's concerns included what he perceived to be a lack of transparency in the judging of competitions, a lack of transparency in the organizations' finances, and an unwillingness among the organizations to give athletes a greater share of revenues.

25. Two events occurred in 2015 that prompted Mr. Thompson to finally sever ties with Mr. Manion and NPC.  The first was a speech delivered by Arnold Schwarzenegger in March 2015 at the "Arnold Classic" – an international competition that carries Mr. Schwarzenegger's name.  During that speech, Mr. Schwarzenegger criticized the state of modern-day judging and leveled specific criticism at Mr. Manion.  He encouraged members of the media and athletes to "[c]all out on him [Manion] and call out on those judges. Because that's how you create change, by calling out and saying that this is unacceptable the way bodybuilding is going."  For Mr. Thompson, the speech struck a nerve.

26. Later in 2015, veteran professional bodybuilder Kai Greene shocked the bodybuilding community when he announced that he would not be competing in the upcoming Mr. Olympia competition, the winner of which is general regarded as the most accomplished bodybuilder in the world.  In response to speculation in the media about why he had dropped out, Greene stated: "Let me just say that behind the scenes there is just so much more things that are going on than I'm at liberty to share with you."  For Mr. Thompson, Greene's withdrawal from the Mr. Olympia competition was the final straw.

27. Mr. Thompson resolved to form a new competitive bodybuilding league that would address what he perceived to be the problems and injustices of the current regime.

28. On or around September 14, 2015, Mr. Thompson advised Mr. Manion that he was resigning his position with NPC.

### Formation of Nspire and Promotion of Space City Event in Houston

29. Following his departure from NPC, Mr. Thompson formed Nspire Physique Championship League, LLC ("Nspire").  In a social media post announcing the formation of the league, Mr. Thompson wrote that his vision was to create "a shared economy by rewarding the athletes and to provide the transparency of the process by which they compete." (original emphasis omitted)

30. Mr. Thompson's announcement generated significant buzz in the bodybuilding community.

31. Prior to the time of his departure from NPC, Mr. Thompson had organized and heavily promoted an event known as the 2015 Fitness Space City Championship (the "Space City Event").  The Space City Event was an NPC-sanctioned amateur event scheduled to take place in Houston on December 12, 2015.  NPC sanctions are typically given approximately six to twelve months prior to an event.  Mr. Thompson received his sanction for the Space City Event in the first quarter of 2015.

32.  On or around October 15, 2015, Mr. Thompson was contacted by Bob Cicherillo.

33. Mr. Cicherillo is an IFBB Professional bodybuilder and is, upon information and belief, an employee, officer, director, and/or agent of Mr. Manion and/or NPC.

34. Mr. Cicherillo urged Mr. Thompson to request a refund for the sanction that Mr. Thompson had obtained from NPC for the Space City Event.  Mr. Cicherillo gave assurances to Mr. Thompson that the Space City Event could still go on as planned (albeit as a non-NPC-sanctioned event) and that NPC would not interfere in any way with the Space City Event.

35. Relying upon Mr. Cicherillo's representation that NPC would not interfere in any way with the Space City Event, Mr. Thompson requested and obtained a refund of the NPC sanction.

36. Mr. Thompson's agreement with Mr. Cicherillo was reinforced in subsequent conversations between Mr. Manion and Mr. Thompson regarding the parting of ways between Mr. Thompson and NPC.  Both parties to those conversations expressed the desire for a "smooth transition" for the betterment of the sport and the athletes that had registered for Mr. Thompson's Space City Event.

### NPC Promotes Competing Event in Houston

37.  Mr. Thompson continued to market and promote the Space City Event.  Because it was to be the first event promoted by Nspire, Mr. Thompson believed that it was critical to the long-term success of Nspire that the Space City Event should be a success.

38. However, in late October 2015, shortly after Mr. Thompson obtained a refund for his NPC sanction, NPC announced that it, too, would be hosting an event in Houston on December 12, 2015 – the same day and in the same city in which the Space City Event was scheduled to take place.

39. NPC's promoters in Texas marketed its event as the "Texas Cup."  Many of the marketing materials for the Texas Cup highlighted the fact that the Space City Event was not an NPC-sanctioned event. For example, a direct mailer prominently stated that "THE SPACE CITY IS NOT [A] NATIONAL PHYSIQUE COMMITTEE EVENT!"

40. In social media posts, NPC promoters similarly emphasized that the Space City Event was not sanctioned by the NPC, and they encouraged athletes who had registered for the Space City Event to obtain a refund.  A representative Facebook post, dated October 11, 2015, stated:

"SPACE CITY is NOT a National Physique Committee Sanctioned event . . . . We are offering the NPC Athletes a real NPC show to attend if you do not want to participate in Space City (since it's not NPC sanctioned)."

41. In addition, the NPC took the unusual step of arranging for approximately 100 high-profile professional bodybuilders to attend the Texas Cup in an effort to further promote its newly sanctioned and scheduled event.

42. To ensure that IFBB or NPC-affiliated athletes or judges would not participate in the Space City Event, or otherwise support Mr. Thompson's efforts to compete, IFBB published the following statement on its website in early November 2015 under the heading "WARNING NOTICE":

> The IFBB Executive Council, in its 5th November 2015 meeting in Benidorm, Spain – on recommendation of the IFBB Disciplinary Commission . . . has deliberated the expulsion of Mr. Timothy Lee Thompson from the IFBB, due to his serious breach of provision 19.4.8 of the current IFBB Constitution.
>
> The IFBB specifies that athletes, judges and officials who will participate in Mr. Timothy Lee Thompson's organization competitions, will commit a violation of the current IFBB Constitution (article 19.4.7) and they will be liable to disciplinary measures.
>
> - IFBB Legal Commission

43. On information and belief, all of these actions were taken at the direction and/or request of Mr. Manion.

### Litigation and Settlement Discussions

44. On October 27, 2015, Mr. Manion and NPC sued Mr. Thompson and Nspire in this District (Case No. 2:15-cv-01396-CRE) and alleged claims of trademark infringement, cybersquatting, trademark dilution, unfair competition, unjust enrichment, and breach of fiduciary duties (the "NPC Complaint").

45. On November 5, 2015, Mr. Thompson and Nspire filed a Complaint and Application for Temporary Injunction and Permanent Injunction in the United States District Court for the Northern District of Texas (Case No. 15-3593), alleging tortious interference with existing or prospective contracts between Thompson / Nspire and other parties (the "Dallas Lawsuit").

46. On November 14, 2015, all of the Parties in this case entered into a binding settlement agreement (the "Settlement Agreement"). The Settlement Agreement includes a confidentiality provision. Until this Court provides guidance on the extent to which the terms of the Settlement Agreement may be referenced in public filings in this lawsuit, Plaintiffs will refrain from quoting it or paraphrasing its specific terms. Plaintiffs will instead limit their discussion of the Settlement Agreement to descriptions of the Defendants' conduct that Plaintiffs allege violates the Settlement Agreement.

## Defendants' Breaches of the Settlement Agreement

47. Following the execution of the Settlement Agreement, Defendants commenced breaching the Settlement Agreement in various ways.

48. Mr. Cicherillo, who on information and belief is an employee, officer, director, and/or agent of Defendants, published statements that were highly critical of Mr. Thompson and NSL. These include statements made on January 19, 2016 on his Twitter account (@IFBBProBobChick) that Thompson had "lied directly to Manion's face" and that he had been "taken out of position" (i.e., fired from NPC) rather than resigning.

49. These and other communications by Mr. Cicherillo might reasonably be construed to be derogatory or critical of, or negative toward Defendants.

50. Defendants further breached the Settlement Agreement by, on information and belief, intimidating, threatening, punishing, harassing and/or coercing athletes, vendors, and/or sponsors who affiliated with Mr. Thompson or NSL.

51. Physique athletes Logan Franklin and Adreanna Calhoun had left NPC and/or IFBB Professional to join NSL.  On January 10, 2016 Mr. Franklin announced via his Instagram social media account that he would be returning to Mr. Manion's organization.  The following day, Ms. Calhoun used her own Instagram account to publish a largely identical post announcing her return to Mr. Manion's organization.  The posts follow a common template but also include numerous non-substantive changes, suggesting a common author attempting to make each post appear unique.  For example, both posts included a variation of an apology to Mr. Manion for their disloyalty:

- From Logan Franklin: "I sincerely apologize to the IFBB, Mr Jim Manion, Mr JM Manion, and all athletes that compete in the IFBB."

- From Adreanna Calhoun: "I apologize to Mr. Jim Manion, JM Manion, the IFBB and all of the hardworking athletes."

52. On information and belief, at Mr. Manion's direction, Mr. Franklin and Ms. Calhoun were intimidated, threatened, harassed, and/or coerced into returning to NPC and/or IFBB Professional.

53. Upon information and belief, Defendants have used intimidation, threats, punishment, harassment, and/or coercion to prevent vendors from associating with Mr. Thompson and/or NSL.  These include, but are not limited to, Pro Tan, a division of Performance Brands, Inc., and others.

**Plaintiffs Have Been Damaged by Defendants' Breaches**

54. The Defendants' actions following the execution of the Settlement Agreement have had a significant negative financial impact on Plaintiffs.

55. Attendance at the Space City Event was dramatically diminished due to NPC's decision to stage a competing event on the same date and in the same city. Plaintiffs had projected an attendance of approximately 225 to 250 athletes and 1,000 to 1,500 other attendees, and revenues of approximately $95,000 from entries, attendance, and sponsorship proceeds. Actual attendance was approximately 111 competitors and 500 other attendees, and financially Plaintiffs suffered a net loss of approximately $70,000.

56. In addition, disparaging statements from employees and agents of Defendants have tarnished Plaintiffs' good name and diminished the goodwill they have developed.

57. In addition, the loss of talented, up-and-coming athletes like Logan Franklin and Adreanna Calhoun will have a significant long-term negative financial impact on NSL.

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

58. Plaintiffs restate and re-allege the preceding paragraphs of this Complaint.

59. The Settlement Agreement is a valid, enforceable contract that imposes specific duties on Defendants.

60. By the actions described above, Defendants have materially breached one or more duties imposed upon them by the Settlement Agreement.

61. Plaintiffs' material breach of the Settlement Agreement has resulted in significant injury to Plaintiffs well in excess of $75,000.

62. Plaintiffs are entitled to actual and consequential damages as compensation.

## JURY DEMAND

63. Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

a. Enter judgment that Defendants are liable for breach of the Settlement Agreement;

b. Award Plaintiffs damages in an amount sufficient to compensate them for Defendants' breach of contract, together with prejudgment and post-judgment interest and costs under applicable law; and

c. Award Plaintiffs such and other further relief as this Court deems just and proper under the circumstances.

Date:  January 22, 2016

Respectfully submitted,

*/s/ Roy W. Arnold*
Roy W. Arnold
Pa. I.D. No. 70544
rarnold@reedsmith.com

REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, Pennsylvania 15222
Telephone: 412.288.3916

Of Counsel:

Richard D. Anigian (to be admitted *pro hac vice*)
Texas State Bar No. 01264700
rick.anigian@haynesboone.com

Nick Nelson (to be admitted *pro hac vice*)
Texas State Bar No. 24074804
nick.nelson@haynesboone.com

HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone:  214.651.5000
Telecopier:  214.651.5940

**ATTORNEYS FOR PLAINTIFFS NSPIRE SPORTS LEAGUE, LLC AND TIMOTHY LEE THOMPSON**